IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01233-CMA-CBS

LEROY DAMASIO FRESQUEZ
        Plaintiff,
v.

DEPUTY BALDWIN, JEFFERSON COUNTY SHERIFF OFFICE,
CORRECTIONAL HEALTHCARE MANAGEMENT,
NURSE KRISTA BIES,
NURSE TATYANA BISKUP-STOJILKOVIC
NURSE VICTORIA CURTIS,
NURSE TRACY HAINES,
NURSE SHIRLEY WITHROW, and
NURSE BARBARA GREER,
        Defendants.

---

## RECOMMENDATION AND ORDER ON PENDING MOTIONS

---

Magistrate Judge Shaffer

THIS MATTER presents the court with the following pending motions:  (1) Defendant

Baldwin's Motion for Summary Judgment (doc. #140), filed on April 21, 2010; (2) Plaintiff

Fresquez's Motion Seeking Leave to Amend Amended Complaint (doc. #176), filed on July 23,

2010; (3) Defendants'[1] Renewed Motion to Strike Plaintiff's Expert Disclosures (doc. #184),

filed on August 13, 2010; (4) the CHM Defendants' Motion for Summary Judgment (doc. #199)

filed on September 29, 2010; (5) Plaintiff's Motion for Summary Judgment (doc. #204), filed on

October 13, 2010; (6) Defendants' Joint Motion to Strike Plaintiff's Motion for Summary

---

[1]This joint motion was filed on behalf of Defendants Correctional Healthcare
Management, Krista Bies, Tatyana Biskup-Stojilkovic, Victoria Curtis, Tracy Haines, Shirley
Withrow, Barbara Greer (hereinafter collectively described as the "CHM Defendants"), and
Jefferson County Deputy Sheriff Craig Baldwin.

Judgment (doc. #207), filed on October 20, 2010; and (7) Plaintiff's Motion for Leave to Designate Jefferson County Sheriff Office Mental Health Doctor Deborah Reynolds, M.D. (doc. #213), filed on November 1, 2010.

By Order of Reference to United States Magistrate Judge (doc. #17), this matter was referred to this court to, *inter alia*, "hear and determine pretrial matters, including discovery and other dispositive motions," and "conduct hearings, including evidentiary hearings, and submit proposed findings of fact and recommendations for rulings on dispositive motions." Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may designate a magistrate judge to conduct hearings and submit proposed findings of fact and recommendations with respect to any dispositive motion.  The pending motions for summary judgment clearly qualify as "dispositive" motions for purposes of § 636(b)(1)(A).  However, the Tenth Circuit has held that "[m]otions not designated on their face as one of those excepted in [§ 636(b)(1)(A)] are nevertheless to be treated as such when they have an identical effect."  *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (citing *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir. 1988)).  Here, a favorable ruling on Defendants' Renewed Motion to Strike Plaintiff's Expert Disclosures could have a dispositive effect in light of the arguments raised in the CHM Defendants' Motion for Summary Judgment (doc. #199).  Similarly, an adverse ruling on Plaintiff's Motion Seeking Leave to Amend Amended Complaint (doc. #176) could be dispositive as to putative claims and defendants.  *See McFadden v. Pioneer Natural Resources USA, Inc.*, 2006 WL 3059967, at *1 (D. Colo. 2006) (citing *Pedro v. Armour Swift-Eckrich*, 118 F. Supp.2d 1155, 1157 (D. Kan. 2000)).[2]

---

[2]        Copies of unpublished decisions cited are attached to this Recommendation.

2

The court has carefully reviewed the pending motions and related briefs and exhibits, the entire court file and the applicable case law, and is sufficiently advised in the premises.  For the reasons discussed below, the court enters the following Recommendations and Order.

## FACTUAL BACKGROUND

Leroy Fresquez initiated this *pro se* action on June 18, 2008 with the filing of his original Complaint.  At that time, Mr. Fresquez was incarcerated at the Jefferson County Detention Facility in Golden, Colorado.  Plaintiff's original Complaint named Correctional Healthcare Management ("CHM") and the Jefferson County Sheriff's Office Detention Facility as defendants, and asserted a single claim for medical malpractice and deliberate indifference under the Eighth Amendment.  At the court's direction, Mr. Fresquez filed an Amended Complaint (doc. #13) on July 23, 2008.

In his Amended Complaint, Plaintiff asserted claims against Jefferson County, Deputy Baldwin, Correctional Healthcare Management, Nurse Kristen (LNU), Nurse Vicky (LNU), Nurse Tracy (LNU), Nurse Candice (LNU),[3] Nurse Sherly (LNU) and Nurse Barb (LNU).[4]  Mr. Fresquez alleged in the Amended Complaint that on "May 18th, 2008, I was assaulted by an inmate in Jefferson County Jail, which fractured and caved-in my right cheekbone," and that from May 18, 2008 to May 29, 2008, he was denied medical care.  Plaintiff's first claim purported to seek relief for "Violated Civil Rights, Grievance, Constitutional Tort, Willful

---

[3]On October 15, 2008, this court granted Mr. Fresquez' Motion to Amend Complaint (doc. #58) which sought to substitute "Nurse Tatiana (Last Name Unknown)" for "Nurse Candice (Last Name Unknown)."

[4]The Amended Complaint also named as defendants "Sergeant on Duty who received 'Kite' Request" and "Lieutenant on Duty May 29[th], 2008."

Neglect, 1st Amendment under U.S. Constitution, Government Negligence, Wrongful Conduct, Fiduciary Relationship, [and] Customary law." The second claim alleged a violation of "Customary Law, Policy, Fiduciary Relationship [and] Concurrent Negligence," while the third claim alleged "Malpractice, Concurrent Negligence, Willful Neglect, Violated Civil Rights, Willful & Wanton Misconduct, [and] Fiduciary Relationship." The fourth claim in the Amended Complaint alleged "Emotional Distress, Cruel & Unusual Punishment [and] Irreparable Injury." This court interpreted the Amended Complaint as asserting an Eighth Amendment claim based upon a denial of medical treatment against all Defendants except Correctional Healthcare Management, and a state law negligence claim against CHM and its named employees. All Defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

On August 13, 2009, the district court entered an Order Adopting and Affirming February 17, 2009 Recommendation of United States Magistrate Judge (doc. #92). That Order concluded that Mr. Fresquez had stated an Eighth Amendment claim "with regard to the denial of medical treatment between May 18, 2008 and May 29, 2008 against Deputy Baldwin" and a "state law professional negligence claim against the CHM Defendants." All other claims asserted in the Amended Complaint were dismissed. Gregory A. Hall, Esq. and Eugene L. Deikman, Esq. entered appearances on behalf of Plaintiff on March 6, 2009.

Following the district court's Order of August 13, 2009, I convened a Fed. R. Civ. P. 16 scheduling conference on September 22, 2009. At that scheduling conference, the court set a deadline of December 1, 2009 for joinder of parties and amendment of pleadings, and a deadline of December 1, 2009 for completing fact discovery. I set a further status conference for December 10, 2009.

4

On November 6, 2009, Messrs Hall and Deikman moved to withdraw as counsel for Mr. Fresquez, citing Plaintiff's failure to communicate and cooperate with counsel.  The court granted that motion on December 10, 2009.  During a status conference (doc. #113) held on December 22, 2009, the court extended the fact discovery deadline to March 31, 2010.  I further directed Plaintiff to designate his experts on or before April 5, 2010 and Defendants to designate their experts by May 3, 2010.  All expert discovery was to be completed by May 31, 2010 and dispositive motions were to be filed on or before June 30, 2010.  *See* Transcript of Status Conference of December 22, 2009 (doc. #122), at 20.  On June 24, 2010, the court granted Defendants' Joint Motion for Extension of Time to Complete Expert Discovery (doc. #157) and extended the deadline for completing expert discovery to August 23, 2010.

On February 11, 2010, Mr. Fresquez filed a Motion to Place Plaintiff's Exhibits A through T in Safe Keeping with the Court Till Trial (doc. #119).  According to Mr. Fresquez, Exhibits A through T "are some of the documents of Correctional Healthcare Management, Jefferson County Sheriff Office, Denver Health Records of several Medical Doctor [sic], also Dr. Crum evaluation that I will be using as exhibit [sic] to verify my claims."  I granted this motion (doc. #121) on February 12, 2010 and directed that "Plaintiff's exhibits have been filed with and electronically stored by the court."  On March 29, 2010, Mr. Fresquez filed another Motion to Place Exhibits in Safe Keeping with the Court Till Trial (doc. #129), which the court granted on March 30, 2010.  Plaintiff filed yet another Request to Place Exhibit 1A Through Exhibit 1M in Safe Keeping with The Court Till Trial (doc. #212) on November 1, 2010.  I granted the March 29, 2010 Motion and the November 1, 2010 Request.

During a status conference (doc. #169) on June 24, 2010, this court extended to

September 30, 2010 the deadline for filing dispositive motions, but expressed its disinclination to

extended that deadline any further.  The CHM Defendants and Defendant Baldwin have filed

timely motions under Fed. R. Civ. P. 56.  Mr. Fresquez filed his Motion for Summary Judgment

thirteen days after the September 30, 2010 deadline.

## ANALYSIS

I.    *Defendant Baldwin's Motion for Summary Judgment*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(c)(2).  *See*

*also Devery Implement Company v. J.I. Case Company,* 944 F.2d 724, 726 (10th Cir.1991);

*Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir.1991).  To meet the burden of

persuasion required to support summary judgment under Rule  56, the movant must "point to

those portions of the record that demonstrate an absence of a genuine issue of material fact,

given the relevant substantive law."  *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022,

1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  A fact is

"material" if under the substantive law it could have an effect on the outcome of the lawsuit.

*Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp*., 220 F.3d 1184,

1190 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

While the moving party bears the initial burden of showing that there is an absence of

any issues of material fact, *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991), the

movant need not negate the non-movant's claim.  *See John Hancock Mut. Life Ins. Co. v.*

*Weisman*, 27 F.3d 500, 503 (10th Cir. 1994); *Universal Money Ctrs., Inc. v. American Tel. &*

*Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).  Once the moving party points to an absence of evidence to support the non-moving party's claim, the non-moving party may not rest upon its pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case.  *See* Fed. R. Civ. P. 56(e).  *See also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

The court must construe the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party.  *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-52.  Evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment.  *Ayon v. Gourley*, 47 F. Supp. 2d 1246, 1252 (D. Colo. 1998).  The demonstration of "some metaphysical doubt as to the material facts" is not sufficient to establish a genuine issue of material fact.  *Foreman v. Richmond Police Department*, 104 F.3d 950, 957 (7th Cir. 1997).  "The very purpose of a summary judgment action is to determine whether trial is necessary."  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

For purposes of Defendant Baldwin's pending motion, the following facts are material and apparently undisputed.  On May 18, 2008, at approximately 1:45 p.m., Plaintiff Fresquez was assaulted by another inmate while playing basketball in the recreation yard.  That same day, Mr. Fresquez reported the assault to Todd Woolley, the deputy on duty in Module 6C of the Jefferson County Detention Facility.  Woolley relocated Mr. Fresquez to Module 7A "for his safety."  *See* Exhibit A-8 (doc. #140-8) attached to Defendant Baldwin's Motion for Summary

7

Judgment.[5]

That same day, Deputy Brad Stiles was asked to photograph Mr. Fresquez's injuries. According to Stiles, Plaintiff complained "that he was getting a migraine and asked to go down to medical." As Stiles recalled in a statement prepared on June 20, 2008,

> Fresquez had swelling between his right eyebrow and right temple, approximately the size of two quarters side by side. He also had scratches on the back of his neck, on the right side; additionally he had scratches on his right shoulder blade and left collar bone.

Stiles photographed Plaintiff's injuries and then told Deputy Albers that Mr. Fresquez was requesting "to be seen by medical." *See* Exhibit A-8 (doc. #140-8) attached to Defendant Baldwin's Motion for Summary Judgment.[6]

On May 18, 2008, at approximately 2:30 p.m., Mr. Fresquez was seen in the medical unit by Defendant Nurse Krista Bies. An "Emergency Anatomical Form" prepared by Nurse Bies on May 18, 2008 referred to a "lump to right side of [Mr. Fresquez's] head, near eye." *See* Exhibit H (doc. #119-2, at page 1 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.[7] Records produced to Mr. Fresquez during discovery indicate that a

---

[5]Mr. Fresquez included Deputy Woolley's June 20, 2008 Incident Report with the materials tendered as Exhibit C1 (doc. #119-1, at page 15 of 69) to his Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

[6]Deputy Stiles' June 20, 2008 Incident Report was included as part of Exhibit C1 (doc. #119-1, at page 18 of 69) to Mr. Fresquez' Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

[7]Mr. Frezquez told the Jefferson County Sheriff's Internal Affairs investigator on June 25, 2008, that he had requested to see a doctor. According Mr. Fresquez, Nurse Bies said that no doctor was on duty in the Detention Facility, whereupon Plaintiff asked to go to the hospital. Instead, Nurse Bies "felt [Mr. Fresquez's] head, gave him a bag of ice, 1 Ibuprofen, and sent him back to his module." *See* Exhibit L (doc. #119-2, at pages 22 and 23 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

nurse was in Module 7A at approximately 9:24 p.m. on May 18, 2008 and that Plaintiff received ibuprofen at that time. *See* Exhibit C3 (doc. #119-1, at page 35 of 69) and Exhibit I (doc. #119-2, at page 7 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

Defendant Baldwin was not assigned to Module 7A on May 18, 2008. *See* Exhibits A-3 and A-10 (doc. # 140-3 and doc. #140-10) attached to Defendant Baldwin's Motion for Summary Judgment. *See also* Exhibits C2 (doc. #119-1, at pages 28-32 of 69) and C3 (doc. #119-1, at pages 34-35 of 69) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court. On May 19, 2008, Defendant Baldwin was assigned to the day shift in Module 7A. *See* Exhibits A-3 and A-17 (doc. #140-3 and doc. #140-17) attached to Defendant Baldwin's Motion for Summary Judgment. *See also* Exhibit C3 (doc. #119-1, at pages 36-38 of 69) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court. At approximately 10:38 a.m. on May 19, 2008, Defendant Baldwin escorted Nurse Duffy on "medline rounds" in Module 7A. *See* Exhibit A-17 (doc. #140-17) attached to Defendant Baldwin's Motion for Summary Judgment. *See also* Exhibit C3 (doc. #119-1, at page 38 of 69) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court. During that visit, Mr. Fresquez received some ibuprofen.[8] *See* Exhibit I (doc. #119-2, at page 7 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court. Defendant Baldwin did not work again in Module 7A between May 20, 2008 and

---

[8]The same Medication Administration Record indicates that Plaintiff later received ibuprofen from a different medical staff member at 9:35 p.m. on May 19, 2008. *See* Exhibit I (doc. #119-2, at page 8 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

June 6, 2008.  *See* Exhibit A-2 attached to Defendant Baldwin's Motion for Summary Judgment.

The recollections of Plaintiff Fresquez and Defendant Baldwin are strikingly dissimilar as to the events of May 19, 2008.  Defendant Baldwin insists that Mr. Fresquez never complained to him of pain or discomfort or asked to be taken to the medical unit.  Defendant Baldwin also claims that on May 19, 2008 he had no knowledge of Plaintiff's broken cheekbone and does "not remember Mr. Fresquez ever asking me for a grievance form so he could grieve the medical unit." *See* Exhibit A-2 (doc. #140-2) attached to Defendant Baldwin's Motion for Summary Judgment.

In his Response brief, Mr. Fresquez claims that on May 19, 2008 Defendant Baldwin was aware of his injury.  According to Plaintiff, Defendant Baldwin was present when Fresquez told Nurse Duffy that he needed "medical treatment (for broken caved-in cheekbone, swollen like a balloon, damage to blood vessel, cartilage, bleeding internally) that something was wrong I need to see a doctor."  Plaintiff says the nurse responded by saying he was "on the doctor's list."[9]  Mr. Fresquez contends that he told Defendant Baldwin that he "was getting the run-around" and that "no one's doing anything."  In the same conversation, Mr. Fresquez purportedly told Baldwin "I want to grievance Medical for neglecting me medical treatment."  Plaintiff claims that on May 19, 2008 he asked Baldwin "for help to get me medical treatment and he intentionally chose not to help me."[10]

---

[9]The Jefferson County Sheriff's Office Detention Operations Manual states that "[a] deputy will accompany the nurse on all medication rounds and will supervise and control inmates so that the nurse is not subjected to verbal or physical abuse in any form."  *See* Exhibit A2   (doc. #204-1, at page 27 of 63), attached to Plaintiff's Motion for Summary Judgement.

[10]When asked on June 25, 2008 about his allegation that he was denied a grievance form, Mr. Fresquez reportedly told the Internal Affairs investigator that he

On May 30, 2008, Plaintiff was seen by Physician's Assistant Matthew Killough who assessed Mr. Fresquez as having a "possible fracture of R zygomatic arch, possible maxillary fracture."  Physician's Assistant Killough noted the need for an "X-ray of R orbit and jaw."  *See* Exhibit I (doc. #119-2, at page 4 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court Till Trial.  Mr. Fresquez apparently received an x-ray on June 2, 2008 which disclosed "no acute osseous findings as visualized."  *See* Exhibit N (doc. #119-2, at page 51 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

On June 4 2008, Plaintiff was seen by Dr. Herr, MD who noted a "right facial injury" and directed a "ct of right facial bones to r/o fxs."  *See* Exhibit I (doc. #119-2, at page 9 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  Mr. Fresquez returned to the medical unit on June 6, 2008.  During that visit, Plaintiff reportedly demanded to go to the hospital "now" and complained that "no one is doing anything for me.  I was told that a CT would be 2 days ago."  *See* Exhibit I (doc. #119-2, at page 8 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  Mr. Fresquez received a CT scan on June 12, 2008.  *See* Exhibit N (doc. #119-2, at page 51 of 54), Exhibit O (doc. #119-2, at page 52 of 54) and Exhibit P (doc. #119-2, at page 53 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  The CT scan

---

could only say that he tried to get a young deputy to give him a grievance and the deputy told him that he would look into it.  The deputy never gave [Mr. Fresquez] a disposition. [Mr. Fresquez] could not recall the date or anything else specific. [Mr. Fresquez] stated that he would get the deputy's name.

*See* Exhibit L (doc. #119-2, at page 24 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

preliminary report identified a "right tripod fracture" and a "depression of the zygomatic arch fracture with medial displacement of the distal fragment on the proximal and there is also a long depressed lateral maxillary sinus wall fragment displaced medially."

Plaintiff Fresquez was seen at the Denver Health Medical Center by Dr. David Shafer, MD on June 17, 2008.  Dr. Shafer assessed Mr. Fresquez as having a "minimally displaced right tripod fracture" and noted that Plaintiff was "displeased with his symptoms and his appearance." Dr. Shafer concluded that "there is only cosmetic indication for surgery at this time . . . because the bones have already mended and there is still some soft tissue residual injury."  *See* Exhibit Q (doc. #119-3, at page 42 of 56) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody.  *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  *Id*. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976) (internal citations omitted).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Id.*

In order to assert an Eighth Amendment claim that Defendant Baldwin was deliberately indifferent to his medical needs, Mr. Fresquez must demonstrate that (1) he suffered objectively serious medical needs and (2) that Deputy Baldwin actually knew of but deliberately disregarded those needs.  *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  *See also Dulany v.*

*Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784

(8th Cir. 1997)).  To satisfy the first prong of this test, an objectively serious medical need or

condition is "one that has been diagnosed by a physician as mandating treatment or one that is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention."

*Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).[11]

In this case, where Plaintiff is alleging a delay in medical care, he must show that the

alleged delay resulted in substantial harm.

> That "substantial harm" can be the ultimate physical injury caused by the
> prisoner's illness, so long as the prisoner can show that the more timely receipt of
> medical treatment would have minimized or prevented the harm.  The "substantial
> harm" can also be an intermediate injury, such as the pain experienced while
> waiting for treatment and analgesics.  Although "not every twinge of pain
> suffered as a result of delay in medical care is actionable," when the pain suffered
> during the delay is substantial, the prisoner "sufficiently establishes the objective
> element of the deliberate indifference test."

*Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) (quoting *Sealock v. Colorado*, 218

F.3d 1205, 1210 (10th Cir. 2000)), *overruled on other grounds, Robbins v. Oklahoma*, 519 F.3d

1242 (10th Cir. 2008).  For purposes of the instant motion only, the court will presume that

Plaintiff has presented evidence of an objectively serious medical need.

To defeat the subject motion for summary judgment, Mr. Fresquez also must come

forward with facts to present a genuine triable issue as to whether Defendant Baldwin had a

sufficiently culpable statement of mind.  For a prison official to be found liable of deliberate

---

[11]Factors that may be indicative of a serious medical need include "the existence of an
injury that a reasonable doctor or patient would find important and worthy of comment or
treatment; the presence of a medical condition that significantly affects an individual's daily
activities; or the existence of chronic and substantial pain," as well as the "potential for harm if
medical care is delayed or denied."  *Gutierrez v. Peters*, 111 F.3d 1364, 1373, n. 8 (7th Cir. 1997)
(internal quotation marks and citation omitted).

indifference, "the official 'must know[] of and disregard [] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference." *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).[12] Mr. Fresquez must present evidence sufficient to support an inference that Defendant Baldwin knew about and disregarded a substantial risk of harm to his health. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). To make out a claim for deliberate indifference under the Eighth Amendment, Plaintiff must show "more than ordinary lack of due care for the prisoner's interests or safety." *See Farmer v. Brennan*, 511 U.S. at 835.

However, it should be noted that the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006). An Eighth Amendment claim is not asserted "if a prisoner's complaint is directed at the wisdom or quality of the medical care he received in prison, even if that treatment is so negligent as to amount of medical malpractice." *Brinton v. Gaffney*, 554 F. Supp. 388, 389 (E.D. Pa. 1983). *See also Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (simple negligence or inadvertent failure to provide adequate medical care does not constitute the unnecessary and wanton infliction of pain). Moreover, a "prisoner's right is to medical care, not to the type or scope of medical care which he personally desires." *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975) (internal quotation

---

[12]To the extent that Defendant Baldwin was serving as a "gatekeeper" for medical personnel capable of treating Plaintiff's condition, he may be liable under the Eighth Amendment to the extent that he delayed or refused to fulfill that gatekeeper role. *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d at 1211)).

marks and citation omitted).  The Constitution does not guarantee a prisoner the treatment of his choice.  *Ledoux v. Davis,* 961 F.2d at 1537 (citations omitted).

In preparing this Recommendation, the court has carefully considered the undisputed facts specifically relating to the events on May 18 and 19, 2008, as those are the facts relevant to the Eighth Amendment claim against Defendant Baldwin.  The court also has construed the relevant disputed facts in the light most favorable to Plaintiff Fresquez.  I have weighed this factual record against the legal standards well-established in Supreme Court and Tenth Circuit precedents.

While Plaintiff clearly felt that his injuries warranted immediate treatment from a doctor and was not satisfied with the care provided by the CHM nursing staff, he was not denied *all* medical treatment or *complete access* to medical personnel on May 18 or 19, 2008.  To the contrary, Mr. Fresquez had contact with nurses and received palliative care (*i.e.*, ice and ibuprofen) on both of those days.  Mr. Fresquez has not come forward with any evidence to suggest that Defendant Baldwin prevented or impeded his access to medical care.

To the contrary, if I credit Mr. Fresquez's own account, Defendant Baldwin was present on May 19, 2008 when Nurse Duffy provided Plaintiff with over-the-counter pain medication and told Plaintiff that Mr. Fresquez was "on the doctor's list."  *Cf. Pennington v. Taylor*, 343 F. Supp. 2d 508, 513 (E.D. Va. 2004) (in granting the defendant correctional officer's motion for summary judgment, held that a correctional officer's response to an apparent risk must be analyzed in context).  Defendant Baldwin was entitled to rely upon this information.  *Cf. Taylor v. Vicky*, 337 Fed. Appx. 412, at *3 (5th Cir. 2009) (plaintiff failed to allege facts sufficient to prove deliberate indifference where the defendant correctional officers knew that plaintiff's

injury had been reported and assumed that the prison medical staff would manage the inmate's care); *Wall v. Dauphin County*, 167 Fed. Appx. 309, at *2 (3rd Cir. 2006) ("[i]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Heard v. Sheahan*, 148 Fed. Appx. 539, 540-41 (7th Cir. 2005) (noting that jail administrators "are generally entitled to rely on the judgment of medical professionals because the question of whether a particular medical treatment is warranted is a 'classic example of a matter for medical judgment.'"). Indeed, the record shows that Mr. Fresquez saw another nurse within approximately eleven hours after his May 19, 2008 exchange with Nurse Duffy.

On the record presented by the parties, there is no evidence from which to infer that Defendant Baldwin intentionally denied or delayed Plaintiff's access to medical treatment or intentionally interfered with any treatment that had been prescribed. As the party with the ultimate burden of proof, Plaintiff is required to come forward with definite and competent evidence to rebut Defendant Baldwin's motion for summary judgment and establish a genuine issue for trial. While this court does not question Plaintiff's steadfast faith in his claims, I conclude that Mr. Fresquez has failed to present sufficient evidence to establish a triable issue on the question of whether Defendant Baldwin was deliberately indifferent to Plaintiff's serious medical needs.

If I fairly construe Plaintiff's allegations and the undisputed record, at most Defendant Baldwin failed to act upon Plaintiff's request for a grievance form.[13] However, "[p]risoners do

---

[13]In his Motion for Summary Judgment, Defendant Baldwin points to Plaintiff's deposition where he testified that he first asked for a grievance "at least two, three days" after his initial injury. If that testimony is true, Baldwin was not on duty in Module 7A and could not

not have a constitutional right to prison grievance procedures." *Heleva v. Kramer*, 214 Fed. Appx. 244, 247 (3rd Cir. 2007) (citation omitted). *See also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("defendants' failure to process any of Buckley's grievances, without more, is not actionable under section 1983"); *Shidler v. Moore*, 409 F. Supp. 2d 1060, 1070 (N.D. Ind. 2006) (citation omitted) ("The Constitution does not require that a prison provide a formal grievance procedure nor adhere to their own procedures if they establish one."); *Allen v. Wood*, 970 F. Supp. 824, 832 (E.D. Wash. 1997) ("plaintiff does not have a constitutional claim with respect to the processing of his grievances by Defendants").

The Tenth Circuit and this district court have held that an  alleged failure to provide grievance forms or to follow grievance procedures do not support a constitutional claim. *See Sims v. Miller*, 5 Fed. Appx. 825, 828 (10th Cir. 2001) (affirming ruling that "insofar as plaintiff contended that CDOC officials had failed to comply with the prison grievance procedures, he had failed to allege the violation of a federal constitutional right"); *Thomas v. Ortiz*, 2007 WL 3256708, *4 (D. Colo. 2007) (in dismissing claims against grievance officer who allegedly failed to process grievance related to the failure to provide adequate medical care, found that state grievance procedure did not create any constitutional rights).

In sum, Mr. Fresquez has failed to come forward with sufficient evidence to establish a triable issue under the Eighth Amendment as to Defendant Baldwin.  Accordingly, judgment

---

have been the officer to whom Fresquez directed his request.  Plaintiff dismisses this argument as nothing more than an insignificant discrepancy in his deposition testimony.  For purposes of my analysis, I have accepted Plaintiff's chronological account.

should be entered in favor of Defendant Baldwin.[14]

II.     *Defendants' Renewed Motion to Strike*

On December 2, 2008, the CHM Defendants moved to dismiss Plaintiff's medical

negligence claim based upon his failure to comply with C.R.S. § 13-20-602.  That statute

requires that where a plaintiff brings a negligence claim against a licensed professional,

plaintiff's counsel must file within 60 days of service of the complaint a "certificate of review

for each . . . licensed professional named as a party."  The certificate of review must be executed

by plaintiff's counsel and declare "that the attorney has consulted with a person who has

expertise in the area of the alleged negligent conduct" and that the professional who has been

consulted

> has reviewed the known facts, including such records, documents, and other
> materials which the professional has found to be relevant to the allegations of
> negligent conduct and, based on the review of such facts, has concluded that the
> filing of the claim . . . does not lack substantial justification within the meaning of
> section 13-17-102(4).

---

[14]The Eighth Amendment claim against Defendant Baldwin provided the only basis for subject matter jurisdiction under 28 U.S.C. § 1331.  Title 28 U.S.C. § 1367(c) states that: "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction, . . ."  *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well"); *Habecker v. Town of Estes Park, Colorado*, 452 F. Supp. 2d 1113, 1135 (D. Colo. 2006) (declining to exercise supplemental jurisdiction).  In addition to his federal claim, Mr. Fresquez has asserted a single state law claim for relief against the CHM Defendants.  In light of the recommendation for dismissal of the only claim over which the district court has original jurisdiction, dismissal of the entire action may be appropriate pursuant to 28 U.S.C. § 1367(c).  *See, e.g., Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (finding no abuse of discretion where the trial court declined to exercise supplemental jurisdiction over the plaintiff prisoner's remaining state malpractice claim after dismissing all federal claims).  *But see Phillips v. Beethe*, 679 P.2d 126, 127 (Colo. App. 1984) (holding that Colorado's remedial revival statute, C.R.S. § 13-80-111 applies to a medical malpractice claim dismissed by a federal court for lack of jurisdiction).

*See* C.R.S. § 13-20-602(3)(a).

On January 9, 2009, I granted Plaintiff's oral request for an extension of time to file a certificate of review in support of his professional negligence claim.  On January 29, 2009, Mr. Fresquez filed a certificate of review (doc. #85) signed by Peter B. Crum, M.D. and addressed to Gregory A. Hall.  Dr. Crum's letter to Mr. Hall indicated that he had reviewed various medical records from the Jefferson County Detention Center for the period from May 2008 to August 2008, and Denver Health Medical Center plastic surgery and ENT records from June 2008 to January 2009.  Dr. Crum opined that

> The care rendered was not within the community-accepted standard of care for Mr. Fresquez.  He presented to the medical unit one day after being struck by another inmate to the right side of the face on the 17th of May.  His initial assessment on the 18th of May by the medical staff at this time was woefully inadequate, consisting of only a minimal description of a single physical finding (lump to right side of head, near eye), with no history that would be appropriate for someone with a blow to the face, no statement of negative physical findings suggesting a complete physical exam appropriate for such an injury, no assessment and no plan.  There was no documentation that follow up of this injury was ordered.  It does not appear that action was taken at this time to further diagnose or treat this abnormal finding.

> . . . The sixteen days between the time of the injury to the initial imaging studies is outside the time frame required for repair of a possible tripod fracture, which must be considered given Mr. Fresquez' presentation.

> In summary, Mr. Fresquez was denied appropriate access to care in a timely fashion such that his injuries could be addressed and treated within the time-frame required to prevent deformity and/or other potential consequences of a tripod fracture, which should have been considered at the initial evaluation of this presentation.

During a status conference on December 22, 2009, the court set an expert discovery cutoff of May 31, 2010 and advised Mr. Fresquez that he would be required to designate his experts pursuant to Fed. R. Civ. P. 26(a)(2).  *See* Transcript of Status Conference of December

19

22, 2009 (doc. #122), at 20.

On March 17, 2010, Mr. Fresquez filed his "Designate Expert Witnesses" (doc. #124). This two-page document listed eight physicians by name, including "Peter B. Crum, M.D.," and provided an address for each.  In a letter dated March 25, 2010, counsel for Defendant Baldwin asked Mr. Fresquez to "provide an expert report from Dr. Crum prior to your deadline for disclosing expert witnesses, April 5, 2010."  *See* Exhibit A-1 (doc. #137-1) attached to Defendants' Joint Motion to Strike Plaintiff's Expert Disclosures.  On or about March 30, 2010, Mr. Fresquez served a supplemental disclosure of "Plaintiff Designate Expert Witnesses."  *See* Exhibit A-3 (doc. #137-3) attached to Defendants' Joint Motion to Strike Plaintiff's Expert Disclosures.  Plaintiff identified the same eight doctors and attached a copy of Dr. Crum's January 29, 2009 letter to Mr. Hall.  Defendant Baldwin's counsel followed that supplemental disclosure with a letter to Mr. Fresquez on April 5, 2010, in which counsel advised that "Dr. Crum's certificate of review is insufficient to comply with the requirements of Rule 26(a)(2)" and identified specific deficiencies.  Defense counsel asked Mr. Fresquez to "provide a proper expert report from Dr. Crum prior to your deadline for disclosing expert witnesses, April 5, 2010."  *See* Exhibit A-4 (doc. #137-4) attached to Defendants' Joint Motion to Strike Plaintiff's Expert Disclosures

On May 13, 2010, Mr. Fresquez sent a letter (doc. #152) to the court in which he stated that "I failed in retaining Dr. Peter B. Crum so I'm left with what he said in his certificate of review."  On the same day, Plaintiff filed his Response to Defendants' Joint Motion to Strike Plaintiff's Expert Disclosures (doc. #149).  Mr. Fresquez explained in his Response that he "would call Peter B. Crum M.D. to testify . . . to a few things he stated in his certificate of

review" and further noted that

> [I]t is not my intention to use Peter B. Crum against the nurses individually, I can prove them negligence [sic] through their actions, their statements to Internal Affairs investigation, CHM Records, Job Description, Jefferson County Sheriff Office Policy and Procedures, Contract, JCSO/CHM Policy and Procedures, etc.

> The main reason why I would call Peter B. Crum is he is a professional in the same field and knows that I wasn't treated at all, which all the Defendants & their counsel state I was treated repeatedly at Jefferson County Detention Facility.

Plaintiff also pointed out that defense counsel had the ability to depose Dr. Crum.

The CHM Defendants and Defendant Baldwin filed a Joint Motion to Strike Plaintiff's Expert Disclosures (doc. #137) on April 15, 2010.  In that motion, Defendants argued that Mr. Fresquez had failed to provide an expert report for Dr. Crum and that Dr. Crum's certificate of review dated January 29, 2009 did not suffice to meet the requirements of Fed. R. Civ. P. 26(a)(2)(B).  Defendants claimed that they were prejudiced by Plaintiff's deficient expert disclosure because "Dr. Crum's report does not address the conduct of any of the individual nurses Mr. Fresquez named in his Complaint" and "[i]t is impossible for these nurses to defend against Mr. Fresquez's claims without knowing the essential evidence and criticisms that might be offered against them at trial."

On June 24, 2010, the court held a status conference to address, in part, Defendants' Joint Motion to Strike.  While acknowledging that Dr. Crum's January 29, 2009 letter did not comply fully with Rule 26(a)(2)(B), I denied Defendants' motion after concluding that the requested sanction was unwarranted at that time.  I did tell Mr. Fresquez, however, that Dr. Crum's letter "just does not comply with Rule 26(a)(2)(B)" and pointed out the specific deficiencies in that letter.  The court directed Mr. Fresquez to comply with Fed. R. Civ. P. 26(a)(2) and supplement his expert disclosures by no later than July 24, 2010.  The court also granted Defendants' Joint

Motion for Extension of Time to Complete Expert Discovery (doc. #157).  The deadline for completing expert discovery was extended to August 23, 2010.

On July 28, 2010, Mr. Fresquez wrote a letter (doc. #178) to this court recounting his efforts to contact Dr. Crum.  Plaintiff explained that his mother "said in January 2009 that she had given $2500 to obtain the certificate of review.  I'm guessing it was to retain [Dr. Crum] as well.  I am unable to contact her to find out."  Mr. Fresquez further stated that he had made two attempts to contact Dr. Crum by mail, which were frustrated by Plaintiff's temporary transfer to other correctional facilities during the interim period.[15]

On August 13, 2010, Defendants filed their Joint Renewed Motion to Strike Plaintiff's Expert Disclosures (doc. # 184).  Plaintiff Fresquez filed a "Supplement Motion" (doc. #198) on September 29, 2010 providing additional information on Dr. Crum.  The supplemental materials obtained from internet sites described Dr. Crum's educational background and his residency in internal medicine at Maine Medical Center.

Compliance with C.R.S. § 13-20-602 provides some protection against the unnecessary expenditure of time and money to defend frivolous professional negligence claims.  *See, e.g., Martinez v. Badis*, 842 P.2d 245, 250 (Colo. 1992).  In that respect, a certificate of review is distinguishable from a Fed. R. Civ. P. 26(a)(2)(B) expert report which is intended to eliminate unfair surprise to the opposing party.  *See Headley v. Ferro Corp.*, 630 F. Supp. 2d 1261, 1266 (W.D. Wash. 2008).  *See also Alpine Bank v. Hubbell*, 2006 WL 2331087, at *5 (D. Colo. 2006)

---

[15]It should be noted that Plaintiff's recurring transfers to other correctional facilities for court appearances have created communications problems.  For example, on April 6, 2010, April 7, 2010, April 28, 2010 and August 3, 2010, mail sent from the court to Mr. Fresquez was returned as undeliverable.

(distinguishing a certificate of review from an expert report); *Shelton v. Penrose/St. Francis Healthcare System*, 984 P.2d 623, 629 (Colo. 1999) (expressing disapproval of the trial court's acceptance of an expert report in lieu of a certificate of review).

It cannot be disputed that Dr. Crum's letter of January 29, 2009 to Plaintiff's former counsel contains opinions that fall within Fed. R. Evid. 702. *Cf. Grassi v. Corrections Corporation of America*, 2008 WL 5172154, at *8 (D. Colo. 2008) (noting that for a claim of medical malpractice, "a plaintiff must establish the controlling standard of care by expert opinion testimony" unless the matter involves issues within the common knowledge and experience of ordinary persons); *Chavez v. Board of Education of Tularosa Municipal School*, 2007 WL 1306734, at *3 (D. N.M. 2007) ("Testimony elicited to establish a comparative standard is expert testimony."); *Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 81 (Colo. 2001) (*en banc*) ("Expert testimony is generally necessary to assist the trier of fact in determining the applicable standards because in most cases [alleging professional negligence] such standards are not within the purview of ordinary persons.").

There is nothing in the available record to suggest that Dr. Crum has ever personally treated or even seen Mr. Fresquez. *Compare Zurba v. United States*, 202 F.R.D. 590, 591-92 (N.D. Ill. 2001) (a treating physician is not required to submit a written expert report "if his testimony is based on observations made during the course of treatment, was not acquired or developed in anticipation of litigation, and is based on personal knowledge) and *Tzoumis v. Tempel Steel Co.*, 168 F. Supp. 2d 871, 876 (N.D. Ill. 2001) (a treating physician must provide an written expert report "[i]f such a physician's testimony goes beyond his personal observations, treatment and diagnosis"). If Dr. Crum will be testifying as a retained expert at

23

trial, Mr. Fresquez must comply with the disclosure requirements of Rule 26(a)(2)(B). *But see Dagdagan v. City of Vallejo*, 263 F.R.D. 632, 635 (E.D. Cal. 2009) (holding that "even retained experts . . . are immune from Rule 26 expert inquiry if they have not been designated by a party to testify as an expert").

Rule 26(a)(2) of the Federal Rules of Civil Procedure explicitly states that "a party shall disclose to other parties the identity of *any person* who may be used at trial to present evidence under Rule 702, 703, or 705 of the Federal Rules of Evidence." *See* Fed. R. Civ. P. 26(a)(2)(A) (emphasis added). Rule 26(a) disclosures are designed to accelerate the exchange of basic information, to "help focus the discovery that is needed, and facilitate preparation for trial or settlement." *See* Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a). The disclosures required by Rule 26(a) should provide the parties "with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement." *Windom v. FM Industries, Inc.*, 2003 WL 21939033, at *2 (D. Neb. 2003) (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992)).

> Formal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial. [Defendant] should not be made to assume that each witness disclosed by the [Plaintiffs] could be an expert witness at trial. The failure to disclose experts prejudiced [Defendant] because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony . . . , retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report.

*Musser v. Gentiva Health Services*, 356 F.3d 751, 757-58 (7th Cir. 2004).

When the expert is "a witness who is retained or specifically employed to provide expert testimony in the case," the required disclosure must take the form of a signed written report.

*See* Fed. R. Civ. P. 26(a)(2)(B).  Rule 26(a)(2)(B) provides that, "unless otherwise ordered by the court," a retained expert must provide a written report that contains:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the data or other information considered by the witness in forming them;

(iii)   any exhibits that will be used to summarize or support them;

(iv)    the witness's qualifications, including a list of publications authored in the previous ten years;

(v)     a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

*See* Fed. R. Civ. P. 26(a)(2)(B).  *Cf. Reed v. Binder*, 165 F.R.D. 424, 428 n. 6 (D. N.J. 1996) (an expert report should indicate "what the expert saw, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be expressed").

The requirements set out in Rule 26(a)(2)(B)(i)-(vi) are "mandatory" and "[a] litigant who fails to comply with these requirements does so at his own peril." *Cohimia v. Arden Health Services, LLC*, 254 F.R.D 426, 429 (N.D. Okl. 2008).  Rule 37(c)(1) of the Federal Rules of Civil Procedure states that where a party fails to make a disclosure required by Rule 26(a) or Rule 26(e)(1), that party may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Dr. Crum's January 29, 2009 letter does not suffice as an "expert report" because it does not include all of the elements required by Rule 26(a)(2)(B).  More specifically, the certificate of review does not provide a list of all publications Dr. Crum has authored in the previous ten years, a list of all other cases in which Dr. Crum testified as an expert at trial or by deposition over the preceding four years, or a statement of the compensation Dr. Crum would be paid for testifying as an expert in this case.  The certificate of review also does not identify any exhibits

25

that Dr. Crum would use at trial to summarize or support his expert opinions.

Under Rule 37(c)(1), Plaintiff's failure to provide the foregoing information provides a basis for excluding Dr. Crum's opinions, both for purposes of dispositive motions and trial. *See, e.g., Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (holding that trial court did not abuse its discretion in excluding expert witnesses whose disclosures did not comply with Rule 26(a)(2)(B)). *See also Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este and Sara Lopez, M.D.*, 456 F.3d 272, 276 (1st Cir. 2006) (holding that trial court did not abuse its discretion by excluding plaintiff's expert where expert report did not contain a list of expert's publications or explain expert's compensation arrangement); *Adams v. J. Meyers Builders, Inc.*, 671 F. Supp. 2d 262, 268-71 (D. N.H. 2009) (in granting plaintiffs' motion to exclude defendant's expert, held that defendant's failure to provide all the information required by Rule 26(a)(2)(B)(i)-(vi) was neither substantially justified or harmless under Rule 37(a)); *American General Life and Accident Insurance Co. v. Ward*, 530 F. Supp. 2d 1306, 1312 (N.D. Ga. 2008) (challenged report did not identify expert's compensation or contain a list of publications or cases in which expert had testified); *Pell v. E.I. DuPont De Nemours & Co., Inc.*, 231 F.R.D. 186, 193 (D. Del. 2005) (holding that expert report did not "even come close to satisfying the requirements for expert reports" because it failed, in part, to identify the expert's publications, a list of other cases in which the expert testified or an indication of his compensation from the plaintiffs).

Although Rule 37(c)(1) is written is mandatory terms, exclusion of a witness is not required where the failure to comply was "substantially justified" or is "harmless."  Moreover, the court has considerable discretion to impose "other appropriate sanctions" in addition to or in

26

lieu of an order striking witnesses or evidence not properly disclosed. *See Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (recognizing that Rule 37(c) vests broad discretion with the trial court). *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting that the district court's discretion should be given particularly wide latitude in imposing sanctions under Rule 37(c)(1)); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001) (holding that district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations).

Thus, exclusion of an expert's opinions is not always appropriate or required simply because the retained expert failed to provide all of the information required by Rule 26(a)(2)(B) (i)-(vi).  In fairness to Mr. Fresquez, the court must acknowledge that Dr. Crum's certificate of review provides a significant portion of the most critical information required by Rule 26(a)(2)(B).  *Cf. Jenkins v. Bartlett*, 487 F.3d 482, 488 (7th Cir. 2007) (holding that defendants' expert reports substantially complied with Rule 26(b)(2)(B); any shortcomings in the expert disclosures were harmless); *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 396-97 (S.D.N.Y. 2005) (while the court noted certain deficiencies in the expert's report, the challenged disclosures did provide a complete statement of the expert's opinions, the bases for those opinions, and the materials the expert reviewed in forming her opinions); *Currier v. United Technologies Corp.*, 213 F.R.D. 87, 88 (D. Me. 2003) (declined to impose sanctions for plaintiff's failure to comply with Rule 26(a)(2)(B) by providing a list of other cases in which plaintiff's expert had testified; the court noted that defendant had "failed to explain what prejudice arises from this particular omission").

For example, the January 29, 2009 letter purports to set forth Dr. Crum's "professional opinion regarding the care that Mr. Fresquez received while incarcerated by the Jefferson County Detention Center from May to August of 2008."  Although Dr. Crum's certificate of review does not attribute conduct to particular defendants, he does opine that

> Mr. Fresquez was denied appropriate access to care in a timely fashion such that his injuries could be addressed and treated within the time-frame required to prevent deformity and/or other potential consequences of a tripod fracture, which should have been considered at the initial evaluation of this presentation.

*See* Certificate of Review (doc. #85).  Dr. Crum also specifically identified the facts he considered pertinent to his opinion and the materials he reviewed in formulating his opinion.  In particular, Dr. Crum

> reviewed the provided Medical Records for Mr. Leroy Fresquez from the Jefferson County Detention Center from May 2008 to August of 2008.  This includes medication records (MAR), sick calls, chart notes, imaging studies, grievances, and the patient's medical requests.  I have also reviewed the Denver Medical Center plastic and ENT records provided from June of 2008 to January of 2009.  I have not reviewed incident reports or other documentation from the Jefferson County Center security department.[16]

*Id.*  Finally, the certificate of review noted, *inter alia*, that Dr. Crum is a board-certified internist, has been practicing medicine since 1993, is a member of the American College of Physicians and the Society of Correctional Physicians, has participated in the National Commission of Correctional Health Care, has cared for inmates in both inpatient and outpatient settings since he began working on the jail ward at Denver General Hospital in 1994, and (as of January 2009), was the Responsible Physician for the Denver Sheriff Department in the Department of

---

[16]Admittedly, Dr. Crum does not identify these records by Bates stamp number or date. However, the volume of relevant documents is relatively small.  Moreover, it is reasonable to presume that Defendants have possession or access to these same documents, as copies appear to have been produced to Mr. Fresquez during discovery.

Correctional Care for the Denver Health Medical System. *Id.*

Other courts have declined to exclude an expert witness based upon incomplete Rule 26(a)(2)(B) disclosures, reasoning that any deficiencies could be cured by providing supplemental disclosures or by deposing the designated expert. *See, e.g., Foreman v. American Road Lines, Inc.*, 623 F. Supp. 2d 1327, 1331 (S.D. Ala. 2008) (held that the defense expert's failure to include a list of other cases in which he testified as an expert did not justify striking defendants' expert where plaintiff's counsel failed to request supplementation under Fed. R. Civ. P. 26(e) and declined to address that topic during the expert's deposition); *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 396 (S.D.N.Y. 2005) (declining to strike plaintiffs' expert based upon deficiencies in the expert report; held that preclusion was not appropriate where the expert was essential to plaintiffs' case, defendants waited over a year to object to the report, and plaintiffs were willing to make the expert available for deposition prior to trial).

For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance. *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 68 (D. Kan. 1995). "Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure." *Id.*

> The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court. A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d at 993. This court

remains mindful that exclusion of evidence is a drastic sanction.  *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 604 (10th Cir. 1997).

Applying the *Woodworker's* factors to the record before the court, I conclude that Mr. Fresquez's failure to comply with his obligations under Rule 26(e)(1) was not substantially justified.  The court also does not find that Plaintiff's non-compliance was harmless.  *Cf. Lintz v. American General Finance, Inc.*, 1999 WL 619045, at *6 (D. Kan. 1999) (noting that non-compliance is harmless only when there is no prejudice to the opposing party).  In this case, the CHM Defendants have expended time and resources in preparing a motion for summary judgment that directly implicates the standard of care issue addressed in Dr. Crum's certificate of review.  "The importance of . . . witness disclosures and the harms resulting from a failure to disclose need little elaboration."  *Licciardi v. TIG Ins. Group.*, 140 F.3d 357, 363 (1st Cir. 1998) (noting that Rule 26 is designed in part to eliminate unfair surprise).  Allowing Mr. Fresquez additional time to supplement his disclosures would simply further delay a case that has already been on the court's docket for a very long time and deny the CHM Defendants a reasonably prompt ruling on their motion.

As for the second and third *Woodworker's* factors, the court recognizes that a trial date has not been set in this case.  That fact affords a greater ability to cure any prejudice to Defendants and minimizes the possibility of trial disruption.  To suggest, however, that sanctions are not appropriate simply because the trial court can provide a further extension of time or delay the trial would effectively absolve Plaintiff of any responsibility for complying with his discovery obligations.  Rule 26(a)(2)(B) and (e) are designed to facilitate case management and the discovery process.  Certainly, Plaintiff's deficient disclosures and failure to supplement are

antithetical to those objectives.

While this court is not convinced that Plaintiff's expert disclosures are the product of bad faith, the lack of bad faith alone may not be enough to overcome the other elements of the *Woodworker's* test. *Cf. Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 955 (10th Cir. 2002). Plaintiff should not be permitted to ignore his disclosure obligations and then avoid sanctions simply by claiming his deficiencies were not willful.

In holding that sanctions are appropriate, I acknowledge Plaintiff's *pro se* and inmate status.  On June 24, 2010, this court *sua sponte* denied Defendants' earlier motion to strike expert disclosures in order to give Mr. Fresquez additional time to comply with Rule 26(a)(2)(B).  I also  extended the deadline for completing expert discovery.  However, once a *pro se* litigant is in court, he or she must conform to the relevant law and rules of court, including the Federal Rules of Civil Procedure.  *See, e.g., Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994); *Moon v. Newsome*, 863 F.2d 835, 937 (11th Cir. 1989).

Determining an appropriate sanction in this case is complicated by the unusual set of circumstances.  The court initially was willing to overlook Plaintiff's failure to comply with Rule 26(a)(2)(B)(i)-(vi), believing that any deficiencies in the January 29, 2009 letter could be cured by requiring a supplemental report.  To that end, on June 24, 2010, I directed Mr. Fresquez to supplement his earlier disclosure.  No such report was forthcoming.  Admittedly, Defendants could have obtained the required information by deposing Dr. Crum.  *See, e.g., Chappel v. SBC - Ameritech*, 2007 WL 2076028, at *3-4 (N.D. Ill. 2007) (denying defendant's motion to exclude testimony from plaintiff's expert; while the report did not include the expert's compensation, his prior publications, or a list of other cases in which he served as an expert, any prejudice to

31

defendant could be cured by taking the expert's deposition and defense counsel could adequately prepare for that deposition with the information currently available); *Barta v. Sears, Roebuck and Co.*, 307 F. Supp. 2d 773, 783 (E.D. Va. 2004) (denying defendant's motion to strike experts where the reports provided substantially complied with Rule 26(a)(2)(B) and defendant had an opportunity to fully depose those experts on their opinions and qualifications); *GAVCO, Inc. v. Chem-Trend, Inc.*, 81 F. Supp. 2d 633, 639 (W.D.N.C. 1999) (noting that plaintiffs could have mitigated defendant's failure to provide an expert witness report by attempting to depose the expert or filing a motion to compel production of his expert witness report in anticipation of a deposition).

The court, however, is not inclined to require Defendants to incur the cost of deposing a physician who may, in fact, be unwilling to testify for Plaintiff as an expert witness at trial. *See* Fed. R. Civ. P. 26(b)(4)(D)(i) (providing that the court must require the party seeking discovery to pay the expert "a reasonable fee" for the time spent in deposition "unless manifest injustice would result"). During the hearing on October 14, 2010, Mr. Fresquez conceded that he has never spoken to or communicated with Dr. Crum directly, and he does not know whether Dr. Crum ever expressly agreed to serve as a retained expert at trial.[17] Indeed, Mr. Fresquez advised the court on May 13, 2010 that he was relying on Dr. Crum's certificate of service because he "failed in retaining Dr. Peter B. Crum." Neither the court nor Mr. Fresquez can presume with any confidence that Dr. Crum would be willing to invest the time and effort associated with service as a testifying expert in this case, or that Mr. Fresquez could find the funds to pay Dr.

---

[17]It appears that Dr. Crum sent his certificate of review to Plaintiff's former counsel, Mr. Hall. There is nothing in the record to suggest that Mr. Fresquez made any attempt to communicate with Mr. Hall to clarify the terms or scope of Dr. Crum's involvement in this case.

Crum for his services.[18]  As the court noted in *Young v. United States*, 181 F.R.D. 344, 346

(W.D. Tex. 1997)

> In the absence of a statute to the contrary, a professional witness may not
> generally be compelled to testify as an expert at the request of a private litigant, as
> such testimony is a matter of contract or bargain.  In other words, just because a
> party wants to make a person work as an expert does not mean that, absent the
> consent of the person in question, the party generally can do so.[19]

Implicit in the phrase "retained testifying expert" is the understanding that the expert

actually has agreed to testify at trial and assume the obligations imposed by Rule 26(a)(2)(B).

While any deficiencies in Dr. Crum's January 29, 2009 letter might be cured through deposition

testimony, Defendants should not be required to incur the expense of deposing Dr. Crum in the

absence of independent verification that Dr. Crum has agreed to serve as a testifying expert at

trial.  Such a deposition would effectively require Defendants to pay for Plaintiff's Rule

26(a)(2)(B) disclosures, thereby absolving Mr. Fresquez of that responsibility.  *Cf. Starks v.

Cough*, 2009 WL 673282, at *1 (S.D. Ill. 2009) ("The court cannot compel a doctor to . . . serve

as [plaintiff's] expert witness for free, and cannot require defendants to fund plaintiff's

litigation.").  Mr. Fresquez has had more than sufficient time to confirm Dr. Crum's willing

participation as a testifying expert and obtain a proper expert report.  At this late stage of the

---

[18]I note that Mr. Fresquez repeatedly has failed to make the monthly installment
payments required by 28 U.S.C. § 1915(b)(1), or to show cause why he has no assets and no
means by which to make each monthly payment.  *See* Order Directing Plaintiff to Make Monthly
Filing Fee Payments or To Show Cause (doc. #226).  Under the circumstances, it would be
impractical or even futile to shift to Plaintiff the cost of deposing Dr. Crum.

[19]*Cf. Statutory Committee of Unsecured Creditors v. Motorola, Inc.*, 218 F.R.D. 325, 326
(D.D.C. 2003) ("In a society where knowledge is so valuable, there is something unfair about the
courts permitting their processes, such as the issuance of a subpoena, to destroy that market in
order to take for free the product of an individual's diligence, research, and expertise.").

proceedings, I am not inclined to require Defendants to bear the expense of clarifying Dr. Crum's status.

Approximately 22 months have passed since Mr. Fresquez filed Dr. Crum's certificate of review. Eight months have gone by since Plaintiff filed his initial Rule 26(a)(2) disclosures and received Defendant Baldwin's request for supplementation. Five months have passed since this court reiterated the deficiencies in Plaintiff's disclosures relating to Dr. Crum and required Mr. Fresquez to supplement. Plaintiff has had more than sufficient time to resolve Dr. Crum's status and cure the deficiencies in his Rule 26(a)(2)(B) disclosures. While the court is not insensitive to the difficulties facing a *pro se* prisoner, I cannot disregard the requirements of Rules 26(a)(2)(B) and Rule 37(c)(1). Accordingly, this court recommends that Defendants' Joint Renewed Motion to Strike Plaintiff's Expert Disclosures be granted.

III.    *CHM Defendants' Motion for Summary Judgment*

The Amended Complaint alleges a single claim for professional negligence against Correctional Healthcare Management and Nurses Krista Bies, Tatyana Biskup-Stojilkovic, Victoria Curtis, Tracy Haines, Shirley Withrow and Barbara Greer (hereinafter "the Defendant Nurses"). More specifically, Mr. Fresquez alleges that on and after May 18, 2008, he repeatedly complained that his cheekbone was fractured, that he was in considerable pain and wanted to see a doctor. Plaintiff contends that from May 18, 2008 until June 16, 2008 (when Mr. Fresquez claims he finally was seen by "a 'real' professional physician"), the Defendant Nurses ignored or failed to properly respond to his requests for proper medical care. As a result of this professional negligence, Mr. Fresquez asserts that he "suffered a lot of pain, had migraine headaches, couldn't eat without shocking pains, [has] blurry vision [and] dizziness." The Amended

34

Complaint further avers that "my cheek could of been fixed before it started healing all caved-in," which Mr. Fresquez claims has resulted in a deformity in his cheek.

For purposes of the instant motion, it is undisputed that Mr. Fresquez sustained his injuries as a result of being punched by another inmate on May 18, 2008.  The parties also do not dispute specific aspects of Plaintiff's medical care after May 18, 2008.  Plaintiff submitted a Medical Request on May 29, 2008.  In that request, Mr. Fresquez wrote that

> On May 17th I was assaulted.  I've asked medical since then to see a Doctor because of my face.  I've went to Medical since but all I get is nurses stating I look alright.  I tell them my cheek bone is fractured and caved in.  I need to see a Doctor to get x-rays done.  I can barely eat, I can't open my mouth.  I need to see a Doctor, this is the second kite requesting to get medical attention.  Please help me ASAP.

*See* Exhibit I (doc. #119-2, at page 6 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

The parties presumably do not dispute that Mr. Fresquez was seen by Physician's Assistant Killough on May 30, 2008.  At that time, PA Killough assessed Mr. Fresquez as having a "possible fracture of R zygomatic arch, possible maxillary fracture" and recommended an "X-ray of R orbit and jaw."[20]  *See* Exhibit I (doc. #119-2, at page 4 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  Mr. Fresquez received an x-ray on June 2, 2008.[21]  The resulting "final x-ray report" contained the notation:  "No acute

---

[20]Notably, PA Killough's notations from May 30, 2008 indicate that Mr. Fresquez was denying "any visual problems at this time."

[21]It also appears that on June 2, 2008, Mr. Fresquez filed a notice of intent to sue the Jefferson County Detention Facility and Correctional Healthcare Management for failing to provide adequate medical care.  *See* Exhibit L (doc. #119-2, at page 22 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

osseous findings as visualized.  If there is persistent concern for orbital fracture, followup CT scan would be recommended."  *See* Exhibit N (doc. #119-2, at page 51 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

On June 3, 2008, Mr. Fresquez submitted another Medical Request to LPN Tracy Haines in which he again requested to see a doctor for his injuries.

> I need to see a Doctor for the same things I've been complaining about since I was assaulted that fractured my cheek, my right side of my face is numb and when I eat shocking pains, can't chew, hurts my right eye vision is blurry.  I need to be seen by someone professional that knows.  Please could you help me.

*See* Exhibit I (doc. #204-2, at page 61 of 84) attached to Plaintiff's Motion for Summary Judgment.

Mr. Fresquez was seen on June 4, 2008 at the Jefferson County Detention Center by Dr Herr who noted a "right facial injury" and directed a "ct of right facial bones to r/o fxs."  *See* Exhibit I (doc. #119-2, at page 9 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  Mr. Fresquez received that CT scan on June 12, 2008.  *See* Exhibit N (doc. #119-2, at page 51 of 54), Exhibit O (doc. #19-2, at page 52 of 54) and Exhibit P (doc. #119-2, at page 53 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  The CT scan preliminary report identified a "right tripod fracture" and a "depression of the zygomatic arch fracture with medial displacement of the distal fragment on the proximal and there is also a long depressed lateral maxillary sinus wall fragment displaced medially."

Plaintiff Fresquez was seen at the Denver Health Medical Center by Dr. Shafer on June 17, 2008.  At that time, Mr. Fresquez complained of

> right-sided facial pain and numbness and states he is unable to fully open his jaw.

> The patient states that he did not receive prompt treatment for his injuries because he is currently incarcerated and his pleas of attention were left unmet. The patient is also complaining of having a depressed right cheek bone.

Dr. Shafer assessed Mr. Fresquez as having a "minimally displaced right tripod fracture" and being "displeased with his symptoms and his appearance." Dr. Shafer concluded that "there is only cosmetic indication for surgery at this time . . . because the bones have already mended and there is still some soft tissue residual injury." Mr. Fresquez was told that his options included "surgical refracture of the bones with open reduction internal fixation" or a "cheek implant to be done in 6 months to 1 year." *See* Exhibit Q (doc. #119-3, at page 42 of 56) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

Plaintiff was examined on August 5, 2008 by Dr. Boatright at Denver Health Medical Center.[22] A physical examination at that time noted

> On exam of patient's right face, the right face is not tender to palpation. However, patient notes that sensation on the left is greater than sensation on the right to touch. Cranial nerves II-XII grossly intact. Extraocular movements intact. The patient has normal smile. The patient is able to raise eyebrows. The patient is able to turn head left to right and stick out tongue. When patient opens mouth, no clicking sound is heard in the TMJ joint region.

Dr. Boatright concluded that "[b]ecause of the delayed time of presentation, the patient is currently not a surgical candidate because the bone is already healed." *See* Exhibit Q (doc. #119-3, at page 30 of 56) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

The CHM Defendants' Motion for Summary Judgment conspicuously omits any facts pertaining to the individual Defendant Nurses. Some information about these defendants and

---

[22]Dr. Boatright's written notes identify Dr. Raffi Gurunluoglu, M.D. as the attending physician.

their contacts with Mr. Fresquez, however, can be gleaned from medical records and documents prepared by the Jefferson County Sheriff's Department.[23]

For example, it appears to be undisputed that Defendant Bies saw Mr. Fresquez in the medical unit at approximately 2:30 p.m. on May 18, 2008.  At that time, Defendant Bies prepared an  "Emergency Anatomical Form" that noted  a "lump to right side of [Mr. Fresquez's] head, near eye."  *See* Exhibit H (doc. #119-2, at page 1 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  While Plaintiff insists that he asked to see a doctor at that time, it is undisputed that LPN Bies only provided ibuprofen and ice.[24]  *See* Exhibit L (doc. #119-2, at pages 22-23 and 25-26 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  Although Defendant Bies claims to have examined Plaintiff's eyes to ensure that his pupils were dilated, it is undisputed that she did not prepare any documentation relating to the May 18, 2008 visit to the medical unit, other than the "Emergency Anatomical Form."  During their investigation in 2008, Internal Affairs personnel were told that LPN Bies should have prepared chart notes documenting Plaintiff's visit.  *See* Exhibit L (doc. #119-2, at page 28 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

---

[23]The court's review of the medical records attached to Mr. Fresquez's Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court identified no entries made by or referencing Defendant Shirley Withrow.  I could find no documentation indicating that LPN Withrow had any contact with Plaintiff during the period from May 18, 2008 to June 4, 2008.

[24]  When she was interviewed by the Sheriff's Department's Internal Affair's Unit on August 22, 208, Defendant Bies recalled seeing Mr. Fresquez after May 18, 2008 during medline rounds, however she denied having any verbal contact with Plaintiff at those times.  *See* Exhibit L (doc. #119-2, at pages 26-27 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

Defendant Biskup-Stojilkovic reportedly provided ibuprofen to Mr. Fresquez during medline rounds in Module 7A on May 18, 2008 at approximately 9:24 p.m., and again on May 20, 2008 at 9:32 p.m.  *See* Exhibit I (doc. #119-2, at pages 7-8 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  Medical records also suggest that Mr. Fresquez had an appointment in the medical unit for May 23, 2008, which never occurred.  It appears that Defendant Biskup-Stojilkovics set a new appointment for Mr. Fresquez to be seen by a "mid level provider" on May 27, 2008.  The appointment description referred to "injury to eye and jaw" and assigned the priority as "high."  *See* Exhibit I (doc. #119-2, at page 2 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

It is not at all clear whether that visit to the medical unit actually took place on May 27, 2008.  The Sheriff's Department Internal Affairs Unit suggested that the May 27, 2008 appointment occurred but that specific details of that appointment were not documented by medical personnel.  *See* Exhibit L (doc. #119-2, at page 28 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  However, other documentation maintained by the Jefferson County Detention Center does not reflect that Mr. Fresquez was taken to the medical unit on that day.  *See* Exhibit C4 (doc. #119-1, at page 40 0f 60) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

Defendant Curtis received a Medical Request from Mr. Fresquez on May 29, 2008, in which Plaintiff complained that "I've asked medical since [May 18, 2008] to see a Doctor because of my face . . . but all I get is nurses stating I look alright. . . . I need to see a Doctor to get x-rays done."  See Exhibit I (doc. #119-2, at page 6 of 54) attached to Motion to Place

Plaintiff's Exhibits A Through T in Safekeeping with the Court.  Other records indicate that

Defendant Curtis made an "high priority" appointment for Mr. Fresquez to be seen by a "mid

level provider" on May 29, 2008.  The same document reflects that Plaintiff complained that "he

was not treated for injury to face on 5/27/08 PA visit not completed.  Second request, [Mr.

Fresquez] thinks he has a fx jaw."  *See* Exhibit I (doc. #119-2, at page 3 of 54) attached to

Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.  This

appointment subsequently was changed to May 30, 2008.  *Id.*  Defendant Curtis reportedly told

Internal Affairs that she had no other contacts with Mr. Fresquez.  *See* Exhibit L (doc. #119-2, at

page 27 of 54)  attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with

the Court.

Defendant Tracy Haines provided Plaintiff with ibuprofen during medline rounds in

Module 7A during the evening of May 21, 2008.  *See* Exhibit I (doc. #119-2, at page 8 of 54)

attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

According to Defendant Haines, during that interaction, Mr. Fresquez complained of pain and

requested a medical kite to see a doctor.  *See* Exhibit L (doc. #119-2, at pages 25-26 of 54)

attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

According to the investigation report prepared by the Internal Affairs Unit, Defendant Haines

recalled that when she spoke with Mr. Fresquez on May 21, 2008,

> he complained that his nose bled every time he blew it. [Defendant Haines] asked
> Leroy what happened and Leroy told her that he had been punched.  Tracy looked
> at Leroy's face and observed his eye to be swollen and it appeared that he had
> been hit.  Tracy told Leroy that he had obviously suffered damage to the blood
> vessels and cartilage.  Tracy told Leroy that if it did not heal in a few days, submit
> a kite and he would be brought down to medical.
>
> On June 3, 2008, Tracy accepted a medical kite from Leroy.  The next day, Tracy

recalled seeing Leroy in medical because Leroy was being seen by the charge nurse Gloria Ring for complaints of numbness in his face.  Gloria told Tracy that she palpated Leroy's face and felt what she believed to be a fracture.  Gloria told Tracy that she was going to set Leroy up with either the doctor or the physician's assistant.

*See* Exhibit L (doc. #119-2, at page 26 of 54) ) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.

Documentation produced in discovery indicates that Defendant Barbara Greer spoke with Mr. Fresquez on June 6, 2008 during an exchange in the day room.  According to those records, Mr. Fresquez complained to LPN Greer that he had been told two days before that he would be receiving a CAT scan but that "no one is doing anything for me."  Mr. Fresquez demanded to be taken to the hospital "now."  Defendant Greer responded that "it took time for these tests to be done if MD ordered 2 days ago."  *See* Exhibit I (doc. #119-2, at page 8 of 54) attached to Motion to Place Plaintiff's Exhibits A Through T in Safekeeping with the Court.[25]

To prevail on a claim of medical malpractice, Mr. Fresquez must prove that:  (1) the named defendants owed him a legal duty to conform to the appropriate standard of care; (2) the individual defendants breached that duty; (3) Plaintiff suffered injury; and (4) there is a causal relationship between the breach and the injury.  *See, e.g., Silva v. Wilcox*, 223 P.3d 127, 135 (Colo. App. 2009).  To sustain his burden of proof at trial as to any particular defendant, Mr. Fresquez must show that defendant did an act that a reasonably careful licensed practical nurse ("LPN") would not do or failed to do an act that a reasonably careful LPN would do.  In other

---

[25]I note that while the CHM Defendants have supported their Motion for Summary Judgment with affidavits from various non-party physicians, there are no comparable affidavits from any of the Defendant Nurses.  In the absence of affidavits or deposition testimony (which Mr. Fresquez could not afford to obtain), the court has a less than complete understanding of the Defendant Nurses' actions or their decision-making processes.

words, Plaintiff must show that the care provided by the individual defendant fell below the

degree of knowledge, skill and care used by other LPNs practicing in the same field, in the same

locality and at the same time.  *See* Colorado Civil Jury Instruction 15:2 (2010 ed.).  *See also*

*Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 81 (Colo. 2001) ("When a claimant

levels a negligence or fault claim against a professional, that professional is judged according to

the tenets of the field to which he or she belongs."); *Wood v. Rowland*, 592 P.2d 1332, 1335

(Colo. App. 1978) (noting that the practice of nursing "is a highly regulated profession in this

state and therefore, the applicable standard of care is that of the reasonable professional").

The CHM Defendants argue that summary judgment must be entered in their favor

because Mr. Fresquez has failed to present evidence sufficient to establish a triable issue on two

of the foregoing elements of his case.  First, the CHM Defendants contend that because Plaintiff

did not properly endorse an expert witness, he has not come forward with any evidence that

would establish a material factual dispute as to the applicable standard of care.  Second, the

CHM Defendants argue that Plaintiff has not addressed the issue of causation or presented

evidence to show that an earlier referral to a physician outside the Jefferson County Detention

Facility would have made any difference in his treatment or outcome.

As to the standard of care, the CHM Defendants correctly note that opinion testimony

from a properly qualified medical expert is generally required "unless the alleged negligence

concerns subject matter within the common knowledge or experience of an ordinary person."

*Tracz ex rel. Tracz v. Charter Centennial Peaks Behavioral Health Systems, Inc.*, 9 P.3d 1168,

1173 (Colo. App. 2000).  Moreover, expert testimony on the applicable standard of care is not

required "if a legislative enactment or administrative rule establishes the specific standard of

care."

> A motion for summary judgment predicated on an allegation that no standard of care has been established is reviewed in the same manner as any other motion for summary judgment.  Therefore, such a motion must be denied unless the record is sufficient to permit the trial court to determine, as a matter of law, that the plaintiff did not establish a standard of care.

*Hice v. Lott*, 223 P.3d 139, 144 (Colo. App. 2009).

In this case, it is undisputed that during the relevant time period, Defendants Bies, Biskup-Stojilkovic, Curtis, Haines, Withrow and Greer were licensed practical nurses.  By statute, a licensed practical nurse in Colorado may engage in the "practice of practical nursing," which is defined as "the performance, under the *supervision of a . . . physician*[26] *. . . or professional nurse authorized to practice in this state*, of those services requiring the education, training and experience , as evidenced by knowledge, abilities, and skills required in this article. for licensing as a practical nurse . . . [and] includes the performance of delegated medical functions."  *See* C.R.S. § 12-38-103(9)(a) and (b) (emphasis added).  *See also Quintana v. United States*, 2008 WL 731115, at *5 (D. Colo. 2008).

This court has been provided with evidence indicating that Defendants Bies provided some degree of professional care to Mr. Fresquez on May 18, 2008.  Defendants have not presented any evidence showing that Defendant Bies rendered these services under the supervision of a physician or professional nurse, or that on May 18, 2008 she communicated

---

[26]The Standard Policies and Procedures established for the Jefferson County Detention Facility in 2008 state that the "responsible physician" shall determine whether an inmate needs health care beyond the resources available at the Detention Facility and that any referral for an outside medical appointment must be "approved by the site medical director."  In 2008, Dr. Herr was listed by Correctional Healthcare Management as the "responsible physician" at the Jefferson County Detention Facility.

information regarding Plaintiff's medical condition to any appropriate supervisor or the "responsible physician."[27]  To the contrary, there is some evidence in the record to suggest that LPN Bies was remiss in not preparing chart notes documenting Plaintiff's visit.  Similarly, there is a medical record showing that Defendant Biskup-Stojilkovic was aware that Mr. Fresquez had sustained a "high priority" "injury to eye and jaw" that should be examined by a "mid level provider" on May 27, 2008.  There is no evidence in the record indicating whether or how LPN Biskup-Stojilkovic communicated this assessment to supervisory personnel.

By her own admission, on May 21, 2008, Defendant Haines observed that Mr. Fresquez appeared to have a swollen eye and "had obviously suffered damage to the blood vessels and cartilage."  Defendant Haines apparently told Plaintiff that "if it did not heal in a few days, submit a kite and he would be brought down to medical."  On June 3, 2008, more than two weeks after the underlying assault and thirteen days after she noted Mr. Fresquez's swollen face, LPN Haines observed Mr. Fresquez in the medical unit being examined by charge nurse Gloria Ring who "palpated Leroy's face and felt what she believed to be a fracture."  Based on that examination, charge nurse Ring was able to conclude that Mr. Fresquez should be "set . . . up with either the doctor or the physician's assistant."

In their motion for summary judgment, the CHM Defendants argue that Plaintiff has failed to provide any evidence relating to the appropriate standard of care and, more particularly, any admissible evidence to refute their contention that "the CHM nurses met the standard of care

---

[27]The Health Care Services Contract between Jefferson County and Correctional Healthcare Management in effect during the relevant time period mandates that "at least one registered nurse is working each shift" and that LPNs "may not work without the supervision of a registered nurse."  *See* Exhibit A (doc. #204-1, at page 11 of 63), attached to Plaintiff's Motion for Summary Judgement.

in providing medical care and treatment to Plaintiff." *See* CHM Defendants' Motion for Summary Judgment, at 6. The latter statement takes some liberties with the supporting Affidavit provided by Dr. Herr. In his Affidavit, Dr. Herr claims to be "substantially familiar with the standard of care for the nurses who evaluate and treat inmates in the correctional care setting." *See* Affidavit of Dr. Herr (doc. #199-2, at ¶ 3) attached as Exhibit B to CHM Defendants' Motion for Summary Judgment. Notably, that is the only reference to "nurses" in Dr. Herr's Affidavit. Later in the same Affidavit, Dr. Herr notes that "Mr. Fresquez was evaluated by *medical staff* at the jail, referred to x-ray, for CT scan and for evaluation by specialists at Denver Health Medical Center." *Id.* at ¶ 7 (emphasis added). In paragraph 8 of the Herr Affidavit, cited by the CHM Defendants at page 6 of their motion, Dr. Herr summarily refers to "CHM personnel"[28] and offers no opinions specifically directed to the role, responsibilities or actions of the licensed practical nurses named as defendants in this case. I do not believe Dr. Herr's undifferentiated and conclusory opinions provide an adequate basis for deciding the standard of care issue in this case. *Cf. Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (noting that "[u]nder *Daubert*, 'the district court functions as the gatekeeper for expert testimony, whether proffered at trial or in connection with a motion for summary judgment") (Sotomayor, J.)

Assuming, without deciding, that the Defendant Nurses breached the applicable standard of care, Mr. Fresquez has not come forward with any evidence to support a conclusion that this breach was the proximate cause of his current condition. To establish a *prima facie* claim for

---

[28]This reference is singularly unhelpful given evidence showing that on and after May 18, 2008 Mr. Fresquez was seen by several licensed practical nurses, charge nurse Gloria Ring, Physician's Assistant Killough and Dr. Herr.

medical malpractice, Plaintiff must demonstrate a causal relationship between the alleged violation of the applicable standard of care and the alleged harm. Here, there is no evidence in the record to support Plaintiff's contention that a prompt referral to the specialists at Denver Health would have resulted in surgical treatment or a different outcome.

Defendants have provided affidavits from Dr. Raffi Gurunluoglu and Dr. Vincent Eusterman, who were employed at Denver Health Medical Center and evaluated Mr. Fresquez on June 17, 2008 and July 7, 2008, respectively. Based upon his medical examination of Mr. Fresquez and his review of the CT scans of his fracture, Dr. Gurunluoglu concluded that

> the injury sustained by Mr. Fresquez was minimal and would not require surgery. It was non-operative. The fracture was minimal and was healing well. Based on the mild presentation of this fracture and its location, I would not have recommended surgery even if I had seen Mr. Fresquez within ten days after the trauma. In this case, there was no need for surgery either immediately following the trauma or presently.

*See* Declaration of Dr. Raffi Gurunluoglu, attached as Exhibit C (doc. #199-3) to CHM Defendants' Motion for Summary Judgment. Dr. Gurunluoglu has opined that Mr. Fresquez "was never a surgical candidate" and that his "vision complaints are unrelated to the injury in May 2008." *Id.* Dr. Eusterman examined Plaintiff on July 7, 2008 and concluded that his injury "was not one that should or would require surgery."

> Based on its location (sic) would not cause any functional problems necessitating surgery, and, as a result, there would have been no need for surgery either immediately following the trauma or now. The fracture was located in an area of the face where there was no issue of nerve damage or damage to vision associated with the injury. . . . Based on the CT scans, the fracture of Mr. Fresquez's cheekbone had healed naturally better than if extensive surgical repair or secondary implant repair were performed.

*See* Declaration of Dr. Vincent Eusterman, attached as Exhibit D (doc. #199-4) to CHM Defendants' Motion for Summary Judgment.

Mr. Fresquez has not presented any evidence, expert or otherwise, that would refute or challenge the opinions expressed by Drs. Gurunluoglu and Eusterman.  Without countervailing expert opinions, Plaintiff's causation argument relies on the notion that "earlier is better than later."  While that argument might have some superficial appeal, it will not suffice to establish causation.  *Cf. McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (in addressing a former inmate's state medical malpractice claim, noted that "'the earlier, the better' theory adds nothing absent some testimony connecting the delay to the causation or aggravation of an injury"). *Compare Dishman v. Wise*, 2009 WL 1938968, at *5 (M.D. Ga. 2009) (holding that expert testimony proffered by plaintiff's treating physician was inadmissible under Fed. R. Evid. 702 where the expert conceded that she could not rule out the possibility that plaintiff would have had the same outcome even if he had been diagnosed and treated earlier).

The court's analysis in *Osorio v. United States*, 2007 WL 2008498 (W.D. Pa. 2007) is instructive.  In that case, the plaintiff prisoner asserted a state medical malpractice claim based upon lingering pain that he attributed to an improper treatment decision by prison medical personnel following a fracture in his right hand.  The plaintiff inmate in *Osorio* did not have an expert witness on the issue of causation.  In granting summary judgment in favor of the defendant, the court noted that

> The compensable injury alleged by plaintiff is that he suffered a delay in the healing process and that he still suffers pain as a result of the treatment option approved by defendant.  Without expert witness testimony, a lay jury cannot evaluate the claim that plaintiff's preferred course of treatment would have produced a different result . . . Trial would be a futile exercise because plaintiff has no medical expert witness to testify that the defendant breached the standard of care to plaintiff, or that the breach caused plaintiff any harm.

*Id.* at *2.  Plaintiff's position in this case suffers from the same inability to prove causation.[29]

In his Response to the CHM Defendants' Motion for Summary Judgment (doc. # 209), Mr. Fresquez attempts to satisfy the causation element by arguing that the Defendant Nurses' failure to provide prompt treatment interfered with his "'free choice' to receive surgery & get my face fixed."  I find that argument unpersuasive.  Plaintiff's subjective belief that surgical treatment for his fracture was warranted is simply insufficient to establish causation. The fact that Plaintiff wanted, or even insisted upon surgery, is not evidence or proof of causation.  *Cf. Williams v. Prison Health Systems*, 2007 WL 2915627, at *3-4  (N.D. Ind. 2007) (holding that "[w]ithout expert medical testimony in support of [plaintiff's] demand for surgery, there is no basis for any finding that he requires surgery").

In short, Mr. Fresquez has not produced any evidence from which a reasonable juror could conclude that the Defendant Nurses' actions or lack of action ultimately caused or worsened his injuries, or made his condition less susceptible of being treated or resolved successfully.  Based upon Plaintiff's failure to come forward with evidence sufficient to establish a triable issue on the essential element of causation, I recommend that the CHM Defendants' motion be granted.

IV.    *Plaintiff's Motion for Summary Judgment*

Mr. Fresquez's Motion for Summary Judgment (doc. # 204) filed on October 13, 2010,

---

[29]In his Response brief, Mr. Fresquez notes Dr. Shafer's June 17, 2008 findings that Plaintiff had a "minimally displaced right tripod fracture which appears to be subacute at the time of the [CT] scan."  Although Dr. Shafer acknowledged that cosmetic surgery in the future might be a possibility, his evaluation is not inconsistent with the expert opinions provided by Drs. Gurunluoglu and Eusterman and does not establish a genuine issue of material fact.

suffers from the same fatal deficiency identified in the foregoing recommendation.  Whether cast

as the moving or non-moving party under Rule 56,  Fresquez ultimately bears the burden of

proving each and every element of his medical malpractice claim.  "[T]he plain language of Rule

56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will have the burden of proof at

trial."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990) (quoting *Celotex Corp.*

*v. Catrett*, 477 U.S. at 322).  *See also Norwick v. Gammell*, 351 F. Supp. 2d 1025, 1033 (D.

Hawaii 2004); *Muslim v. Frame*, 854 F. Supp. 1215, 1222 (E.D. Pa. 1994).  Here, Mr. Fresquez

has failed to present expert testimony on the essential element of causation.  Plaintiff cannot

prevail on summary judgment in the absence of such evidence.  *Cf. Punahele v. United Airlines,*

*Inc.*, 756 F. Supp. 487, 488 (D. Colo. 1991).

Defendants moved on October 20, 2010 to strike Plaintiff's Motion for Summary

Judgment on the grounds that the Motion is untimely and does not comply with the district

judge's practice standards.  In view of my determination that Plaintiff has failed to sustain his

burden under Rule 56, it is unnecessary to address the technical arguments raised in Defendants'

Motion to Strike.  With the recommendation that Plaintiff's Motion for Summary Judgment be

denied, Defendants' Motion to Strike becomes moot.

V.      *Plaintiff's Motion Seeking Leave to Amend Amended Complaint*

On July 23, 2010, Plaintiff moved to "Amend [his] Amended Complaint."  Mr. Fresquez

seeks to add as defendants Matthew Killoughy, PA, Raymond Herr, M.D., and Jefferson County,

Golden, Colorado, whom he contends "contributed in depriving, delaying and neglecting me any

49

type of medical treatment which they should have made sure."  The proposed Second Amended

Complaint also includes a new claim for "emotional distress," a new claim for relief alleging

deliberate indifference on the part of Jefferson County for period after June 2, 2008, and a new

claim against Defendant Correctional Health Management for negligence from May 30, 2008

through June 16, 2008.

The court acknowledges the well-settled rule that motions to amend should be freely

granted when justice requires.  *See, e.g., Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448,

1459-60 (D. Colo. 1995), *aff'd*, 107 F.3d 880 (10th Cir. 1997).  However, a motion to amend may

be denied because of "undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ."

*Foman v. Davis,* 371 U.S. 178, 182 (1962).  A motion to amend must be left to the sound

discretion of the district court, and must be decided based upon a careful evaluation of multiple

factors.  *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984).

In addressing the issue of undue delay in the context of Fed. R. Civ. P. 15(a), courts have

acknowledged two competing considerations.  "'Liberality in amendment is important to assure a

party a fair opportunity to present his claims and defenses,' but 'equal attention should be given

to the proposition that there must be an end finally to a particular litigation.'"  *Cuenca v.*

*University of Kansas*, 205 F. Supp.2d 1226, 1229 (D. Kan. 2002) (quoting *Pallottino v. City of*

*Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994)).

> "Untimeliness is sufficient cause for denying leave [to amend], especially when
> the movant offers no adequate explanation for the delay."  A district court "may
> deny leave if the movant 'knows or should have known of the facts upon which
> the proposed amendment is based but fails to include them in the original

complaint."

*Id.* at 1230 (internal citations omitted).  *See also Johnson v. Methodist Medical Center of Illinois*, 10 F.3d 1300, 1303-04 (7th Cir. 1993) (denying untimely motion to amend under Rule 15(a) based upon unfairness to opposing party).

I note that the instant motion to amend was filed two years after Plaintiff filed his first Amended Complaint, long after the December 1, 2009 deadline for amendment of pleadings, seventeen months after the close of fact discovery, and more than five months after Mr. Fresquez filed his initial Motion to Place Plaintiff's Exhibits A through T in Safe Keeping with the Court Till Trial.  The court may deny leave to amend for untimeliness or undue delay without a showing of prejudice to the opposing party.  *Deghand v. Wal-Mart Stores, Inc.,* 904 F. Supp. 1218 (D. Kan. 1995).  "[W]ith the passage of time (and acceptance of earlier amendments), the party seeking leave to amend must justify that request by more than invocation of the concept of the liberality of Rule 15(a)." *Id.*  In this case, Mr. Fresquez has not persuasively explained why these proposed amendments could not be filed more promptly, particularly given the fact that he has long been aware of Mr. Killough's and Dr. Herr's involvement in his medical treatment.  *See First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1132 (10th Cir. 1987) (finding that trial court properly exercised its discretion in denying motion to amend where the moving party belatedly raised issues that should or could have been presented earlier).  *Cf. Wildauer v. Frederick County*, 993 F.2d 369, 371-72 (4th Cir. 1993) (motion to amend properly denied where plaintiff had access to necessary information as early as April 29, 1991, but did not file his motion to amend until July 17, 1991, after the deadline established in the scheduling order had passed).

51

To the extent the proposed Second Amended Complaint seeks to assert medical malpractice claims against PA Killough and Dr. Herr, Mr. Fresquez also failed to comply with C.R.S. § 13-20-602, which requires a plaintiff to file "a certificate of review for each . . . licensed professional named as a party."  Mr. Fresquez has presented no independent certificate of review that would find substantial justification to assert negligence claims against Killough and Herr.  I find that these putative defendants are prejudiced by untimely amendments that also fail to comply with the procedural prerequisites under C.R.S. § 13-20-602.

As for the putative claim against Jefferson County, Mr. Fresquez previously was put on notice that Jefferson County may not be liable under 18 U.S.C. § 1983 solely because its employees inflict pain on a plaintiff.  *See* Order to Dismiss in Part and To Draw Case to a District Judge and to a Magistrate Judge (doc. #14).  Plaintiff was told in the same Order that he cannot state a claim against Jefferson County under § 1983 merely by pointing to isolated incidents.  The proposed Second Amended Complaint simply repeats that fatal pleading deficiency.  *See also T.V. Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir.) (leave to amend need not be granted where an amendment obviously would be futile).

After two years of litigation, it is not unreasonable or unfair to require Mr. Fresquez to assert his claims and name his defendants with finality.  Under the circumstances, I find that Plaintiff's Motion Seeking Leave to Amend-Amended Complaint (doc. # 176) is untimely and futile, and therefore recommend that it be denied.

VI.     *Plaintiff's Motion for Leave to Designate Jefferson County Sheriff Office Mental Health Doctor Deborah Reynolds, M.D.*

On November 1, 2010, Mr. Fresquez moved for leave to designate Dr. Deborah Reynolds, M.D. as a testifying expert in this case.  According to Plaintiff, Dr. Reynolds "treated and diagnosed me with several conditions due to me not receiving proper professional medical treatment, also by the threats and harassment by officials [at Jefferson County Detention Facility] due to this litigation."  Plaintiff explains that the court originally allowed him to designate eight expert witnesses.  Faced with the prospect that Dr. Crum may be excluded as a testifying expert, Mr. Fresquez proposes to fill that "open spot" by designating Dr. Reynolds.

It cannot be disputed that Plaintiff's attempt to designate Dr. Reynolds is untimely.  On December 22, 2009, this court set a deadline of April 5, 2010 for Plaintiff to disclose his experts. I later extended the deadline for completing expert discovery to August 23, 2010.  The pending motion was filed well after those deadlines had passed.  Rule 16(b)(4) allows the court to modify a scheduling deadline "for good cause."  *See* Fed. R. Civ. P. 16(b)(4).  *See also* D.C.COLO.LCivR 16.1 ("The schedule established by a scheduling order shall not be modified except upon a showing of good cause and by leave of court").  The "good cause" standard requires the moving party to show that despite its diligent efforts, it could not have reasonably met the scheduled deadline.  *See Pumpco, Inc. v. Schenker International, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).  Mr. Fresquez cannot persuasively argue that Dr. Reynold's "Initial Psychiatric Evaluation" is newly discovered evidence.  To the contrary, Plaintiff was well aware of her assessment before the April 5, 2010 deadline for designating his experts, as he included Dr. Reynold's "Initial Psychiatric Evaluation" as Exhibit S (doc. #119-3, at page 51 of 56) to his February 11, 2010 Motion to Place Plaintiff's Exhibits A through T in Safe Keeping with the

Court Till Trial.

Mr. Fresquez seems to argue that Dr. Reynolds is being designated only because this court expressed an inclination to strike Dr. Crum.  Plaintiff should not be permitted to justify an untimely designation by implicating the court.  *Cf. In re Enron Corporation Securities, Derivative & ERISA Litigation*, 610 F. Supp. 2d 600, 653 (S.D. Tex. 2009).  *See also Transamerica Life Insurance Co. v. Lincoln National Life Insurance Co.*, 590 F. Supp. 2d 1093, 1100-1105 (N.D. Iowa 2008) (concluding that plaintiff's belated motion for leave to amend reflected "second guessing" of earlier tactical decisions; held that plaintiff knew all the circumstances giving rise to the belatedly proposed claim well before the deadline for leave to amend).  The Federal Rules of Civil Procedure will not necessarily protect a party from the unforeseen consequences of their own litigation strategy.  *Cf. Martinez v. Target Corp*, 2010 WL 2616651, at *4 (10th Cir. 2010) (finding no abuse of discretion in the trial court's denial of plaintiff's untimely motion for leave to amend; found inadequate plaintiff's explanation that she did not move to amend because she thought her FMLA claim was premature).  Both the court and Defendants are entitled to expect that by a date certain, Plaintiff's list of testifying experts will be fixed and the case will proceed on that basis.  Plaintiff's untimely motion should be denied based upon his failure to establish good cause under Rule 16(b)(4).

I must also disagree with Mr. Fresquez's characterization of Dr. Reynold's "Initial Psychiatric Evaluation."  While Dr. Reynold noted on August 19, 2008 that Mr. Fresquez was "upset that he did not see a doctor until 'a month' after he got in a fight and had a R sided facial injury," Plaintiff is simply incorrect to the extent he suggests that Dr. Reynolds found a causal connection between Plaintiff's course of treatment in May and June 2008 relating to his facial

54

fracture and his mental condition in August 2008.  To the contrary, an objective review of Dr.

Reynold's report discloses no opinions that would be relevant to the salient issues raised in the

pending dispositive motions.  Even if the court was inclined to overlook the untimely

designation of Dr. Reynolds, her psychiatric evaluation would not compel different

recommendations regarding the disposition of Defendants' motions for summary judgment.

Accordingly, Plaintiff's Motion for Leave to Designate Jefferson County Sheriff Office Mental

Health Doctor Deborah Reynolds, M.D. is denied.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1.      Defendants' Joint Motion to Strike Plaintiff's Motion for Summary Judgment

(filed October 20, 2010) (doc. #207) is DENIED as moot; and

2.      Plaintiff's Motion for Leave to Designate Jefferson County Sheriff Office Mental

Health Doctor Deborah Reynolds, M.D. (filed November 1, 2010) (doc. #213) is DENIED.


Further, IT IS RECOMMENDED that:

1.      Defendant Baldwin's Motion for Summary Judgment (filed April 21, 2010) (doc.

#140) be GRANTED;

2.      The CHM Defendants' Motion for Summary Judgment (filed September 29,

2010) (doc. #199) be GRANTED;

3.      Plaintiff Fresquez's Motion Seeking Leave to Amend Amended Complaint (filed

July 23, 2010) (doc. #176) be DENIED;

4.      Defendants Renewed Motion to Strike Plaintiff's Expert Disclosures (filed

August 13, 2010) (doc. #184) be GRANTED; and

     5.     Plaintiff's Motion for Summary Judgment (filed October 13, 2010) (doc. #204) be DENIED.

     6.     Judgment on the Amended Complaint (doc. # 13) be granted in favor of Defendants and against Plaintiff.


**Advisement to the Parties**

     Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International*

*Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 15th day of December 2010.

BY THE COURT:

  s/Craig B. Shaffer          
United States Magistrate Judge